IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW PAUL BOROWSKI, #58580-060 | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) )   Case No. 16-cv-848-JPG ) |
| MAUREEN P. BAIRD, SARA M. REVELL, JOHN/JANE DOE 1, JOHN/JANE DOE 2, and JOHN/JANE DOE 3, | ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Matthew Borowski, an inmate in the United States Penitentiary in Marion, Illinois ("Marion"), brings this *pro se* action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). This case is now before the Court for preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Borowski's claims all stem from two alleged incidents of his mail being screened and rejected by prison authorities. In connection with his claims, Borowski names Maureen P. Baird (warden), Sara M. Revell (grievance review personnel), John/Jane Doe 1 (mail room staff), John/Jane Doe 2 (mail room staff), and John/Jane Doe 3 (mail room staff). Borowski seeks a replacement copy of his calendar at government expense, as well as monetary damages.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the

complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that Borowski's Complaint states sufficient factual and legal claims to proceed beyond threshold screening against some defendants.

## The Complaint

In December of 2015 Borowski first attempted to order the "Straight Stuntin Double Trouble 2016-2018" calendar from Black Media Family, an online retailer and publishing company (Doc. 1 at 20). He subsequently received notice from Black Media Family that the calendar had been rejected by the Warden of Marion (*Id.*). Borowski's mother also attempted to send him the calendar via Amazon vendor Tri State Books/Music. Meanwhile, in February 2016, Borowski contacted Black Media Family to learn more about the potential reasons for the rejection of the publication (*Id.*). On February 21, Black Media Family informed Borowski via e-mail that the calendar did not contain nudity and that Marion was the first such facility to reject it (*Id.*). On February 25, 2016, Black Media Family informed Borowski that they had successfully mailed the calendar to FCI/USP Terre Haute, FCI Seagoville, and FCI Petersburg (*Id.*).

In February 2016, Borowski began the internal grievance procedure at Marion, seeking an explanation for the rejection, as well as an opportunity to review the rejected material to verify the basis for rejection (*Id.*). His initial grievance was denied, and he appealed the denial on February 28, 2016 (*Id.*). On March 3, 2016, Borowski received the Warden's response to his grievance, which he found odd because the response stated that the "mail room" apparently rejected the publication (*Id.* at 20-21). He found the response odd because it was signed by the assistant warden, it did not mention Marion as a sex offender facility, and by his reading it meant the mail room *sua sponte* rejected his publication without the warden's oversight, in contravention of established First Amendment screening procedures (*Id.* at 21).

Borowski pursued appeals of his grievance with the Regional Director and the Central Office as well (*Id.*). Borowski claims that the Regional Director's response parroted the language of the warden's rejection (*Id.* at 21-22). At the time of filing his complaint, Borowski had yet to

receive a response from the Central Office (*Id.* at 22).

Borowski appended the grievances to his complaint (*Id.* at 6-19). In each of his grievances he made the same two allegations: (1) that the prison was mistaken in labeling the publication as containing nudity; and, (2) that his Fifth Amendment due process right was being denied because he was not allowed to review the material himself (*Id.*). The responses to the grievances insisted that the material was rejected based on nudity as defined by prison regulations and the Ensign Amendment (*Id.*).

On August 8, 2016, Borowski filed a Motion seeking to amend his complaint with a two paragraph statement further expounding upon the legal theories he intends to rely upon in pursuing his claims (Doc. 6). In the Motion he contends that his First Amendment rights were violated by the actual rejection of the calendar, and that the violation then extended throughout the grievance process because officials failed to follow appropriate procedures in reviewing the rejected calendar (*Id.*). Namely, at no point did the officials allow him to review the material (*Id.*). He also asserts that in conducting their own review of his grievances, the institution erred because someone other than the Warden rejected the publication, and the Regional Director erred by rejecting his grievance without reviewing the publication (*Id.*).

Borowski seeks replacement of his calendar at government expense, as well as monetary damages (Doc. 1 at 23).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that

is mentioned in the complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** First Amendment claim for rejection of two copies of Borowski's calendar in December 2015-February 2016; and,
>
> **Count 2:** Fifth Amendment Due Process violation for failing to comply with statutory and internal procedures for screening inmate correspondence.

## Count 1

The Supreme Court has recognized that prisoners have protected First Amendment interests in both sending and receiving mail. *See generally Thornburgh v. Abbott*, 490 U.S. 401 (1989) (discussing the scope of a prisoner's First Amendment rights and collecting cases on the framework to be used to assess mail screening mechanisms); *Turner v. Safely*, 482 U.S. 78 (1987); *Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("[a] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system"). The Seventh Circuit has held that "[t]he free-speech clause of the First Amendment applies to communications between an inmate and an outsider." *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (citing *Martin v. Brewer*, 830 F.2d 76, 76 (7th Cir. 1987)). To assert a cause of action for interference with or denial of one's mail under the First Amendment, a prisoner must "allege[] a continuing pattern or repeated occurrences of such conduct." *Id.* (citing *Sizemore v. Williford*, 829 F.2d 608, 609 (7th Cir. 1987)).

However, while prisoners generally have a constitutionally-protected interest in their incoming and outgoing mail, "[p]rison officials may…impose restrictions on prisoner correspondence if those restrictions are 'reasonably related to legitimate penological interests.'" *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011) (quoting *Turner*, 482 U.S. at 89)).

Crime deterrence, prisoner rehabilitation, and protecting the safety of prison guards and inmates are all legitimate penological interests. *Id.* In *Turner*, the Supreme Court held that prison regulations must be assessed under the following factors: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether the inmate has access to "alternative means" of exercising the restricted right; (3) the "impact [an] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and, (4) whether the regulation is an "exaggerated response to prison concerns." *Turner*, 482 U.S. at 89-91.

Of special concern, are content-based restrictions upon a prisoner's exercise of his First Amendment rights. *See Rowe v. Shake,* 196 F.3d 778, 782 (7th Cir. 1999) (discussing the parameters of a prisoner's First Amendment rights to mail and noting that a non-content based claim of minor interference with mail typically does not state a claim grounded in the First Amendment). As is the case with any right a prisoner holds, the right may be subject to certain limitations based on the prison's security needs, and whether there exists a "sufficiently important governmental interest to justify limitations on a prisoner's first amendment rights." *See id.* (citation omitted). The Ensign Amendment states, in relevant part:

> [N]o funds [available to the Attorney General for the Federal Prison System] may be used to distribute or make available to a prisoner any commercially published information or material that is *sexually explicit or features nudity*.

28 U.S.C. § 530C(b)(6) (emphasis added). Implementing regulations define "sexually explicit" as "a pictorial depiction of actual or simulated sexual acts including sexual intercourse, oral sex, or masturbation." 28 C.F.R. § 540.72(b)(4). "Nudity" refers to "pictorial depiction[s] where genitalia or female breasts are exposed." *Id.* § 540.72(b)(2). The term "features" means the publication depicts "nudity or sexually explicit conduct on a routine basis or promotes itself

based upon such depictions in the case of individual one-time issues." *Id.* § 540.72(b)(3). However, nudity is not a "feature" where it illustrates "medical, educational, or anthropological content." *Id.*

The regulations also define the procedures prisons must take when they are prohibited from distributing material under the Ensign Amendment:

> When commercially published information or material may not be distributed by staff or made available to inmates due to statutory restrictions (for example, a prohibition on the use of appropriated funds to distribute or make available to inmates information or material which is sexually explicit or features nudity,) the Warden or designee shall return the information or material to the publisher or sender. The Warden or designee shall advise the publisher or sender than an independent review of the decision may be obtained by writing to the Regional Director within 20 days of receipt of the notification letter. Staff shall provide the inmate with written notice of the action.

*Id.* § 540.72(a).

Here, Borowski complains that his incoming mail—the Straight Stuntin Double Trouble 2016-2018 calendar—was intercepted and returned to two different publishers on two different occasions. Repeat occurrences of interference with an inmate's mail may be grounds for a valid First Amendment claim. *See Zimmerman*, 226 F.3d at 572. Accordingly, Borowski has identified a valid First Amendment issue.

However, under *Bivens* a defendant cannot be liable on the basis of *respondeat superior* or supervisory liability, rather, there must be individual participation and involvement by the defendant. *Arnett*, 658 F.3d at 757. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* (internal quotation and citation omitted). The supervisory liability analysis limits the scope of Count 1 in the present action.

Borowski may proceed with his Complaint against John/Jane Does 1, 2, and 3—the alleged mail room personnel—because he alleges that these individuals were the ones who

personally reviewed and rejected his incoming calendars. By contrast, he may not proceed at this time against Defendants Baird or Revell on Count 1 because he does not allege that either of these individuals actually reviewed and rejected his publication. The factual distinction of who did or did not personally participate in rejecting the calendar is made especially clear by his complaint and his motion to amend wherein he complains that the Warden did not sign off on his grievance, and he states that from the Warden's response he learned that mail room personnel were the ones responsible for the rejection. Thus, in light of Borwoski's own statements about who committed the potential First Amendment act of screening his mail, Count 1 will only be allowed to proceed as to John/Jane Does 1-3. Defendants Baird and Revell will be dismissed with prejudice because they did not personally act in screening the incoming mail.

## Count 2

In addition to alleging an infringement of his First Amendment rights, Borowski also makes vague allegations that the defendants violated his Fifth Amendment due process rights because they failed to follow proper procedures in denying his calendar. He notes that Defendant Baird should have personally reviewed and rejected the publication, and that Defendant Revell erred by simply rubber stamping the outcome of the grievance process at the institution. However, Borowski does not identify how a specific procedure that the defendants failed to follow denied him due process, nor does he directly argue that they misapplied the Ensign Amendment or other screening criteria. Borowski does name "PS5266.11" as an internal regulation that should have been followed, but he provides no detail as to the substance of the regulation.

Prison grievance procedures and internal prison regulations do not give rise to a free standing Constitutional right. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Thus, a

failure to comply with a prison procedure or regulation does not give rise to a due process claim in and of itself "by persons who otherwise did not cause or participate in the underlying conduct." *Id.* However, a basis for personal liability of a prison official for failure to address grievances or procedures may arise if the official receives correspondence that provides him or her with sufficient knowledge of an underlying constitutional deprivation. *See Perez v. Fenoglio*, 792 F.3d 768, 781-81 (7th Cir. 2015) (finding that prison officials who received detailed correspondence about a failure to treat a medical condition may be personally liable for failing to act upon receipt of those grievances).

Here, Borowski has not stated a freestanding due process claim by simply identifying applicable prison procedures for screening mail. He does not have a protected interest in the prison's compliance with those procedures. *See Owens*, 635 F.3d at 953. However, it is not yet clear if Borowski was notifying defendants Baird and Revell of an underlying constitutional deprivation, because the constitutionality of the underlying act hinges on the outcome of Count 1. If the mailroom guards properly excluded the calendar from the facility, then Borowski fails on Counts 1 and 2. However, if the mailroom personnel acted improperly in screening the calendar, then Borowski may also have a valid claim against defendants Baird and Revell for failing to act upon receipt of his grievances. Accordingly, at this juncture, the Court cannot dismiss Count 2 against defendants Baird and Revell.

### Pending Motions

Borowski's motion to amend (Doc. 6) is hereby **GRANTED**, and review of the additional allegations presented in that amendment has occurred in concert with review of the original complaint.

### Identification of unknown defendants

Borowski shall be allowed to proceed with Count 1 against defendants Jane/John Does 1, 2, and 3. However, these parties must be identified with particularity before service of the complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim against the unknown defendants, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants. *Rodriguez*, 577 F.3d at 832. In this case, guidelines for discovery aimed at identifying the unknown defendants will be set by the United States Magistrate Judge, so that Borowski can identify the unknown defendants with particularity. The Court cannot discern, at this early stage, whether defendants Baird or Revell can assist in identifying this individual. Therefore, for the sole purpose of assisting with the identification process, the Court shall direct the Clerk to add Marion's Warden as a defendant, in his or her official capacity only.

Once identified, Borowski shall file a motion to substitute the named defendants with "Jane/John Doe" in the case caption and elsewhere in the complaint. Further, Marion's Warden should file a motion seeking dismissal from this action.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 1 AND COUNT 2** will proceed beyond threshold screening. **COUNT 1** shall proceed against defendants **JANE/JOHN DOE'S 1, 2, and 3. COUNT 2** shall proceed against defendants **BAIRD** and **REVELL.**

The Clerk is hereby **DIRECTED** to **ADD** Marion's Warden as a defendant, in his or her official capacity only, for the sole purpose of responding to discovery aimed at identifying defendants Jane/John Doe 1, 2 and 3.

The Clerk of Court shall prepare for Defendants **BAIRD AND REVELL, and MARION'S WARDEN**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, a copy of Borowski's motion to amend (Doc. 6), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (Jane/John Doe) defendants until such time as Borowski has identified them by name in a properly filed amended complaint. Borowski is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Borowski, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Borowski shall serve upon defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Borowski shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on defendants or counsel. Any paper received

by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a **United States Magistrate Judge** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Borowski, and the judgment includes the payment of costs under § 1915, Borowski will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Borowski is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: September 7, 2016**

    *s/J. Phil Gilbert*
    United States District Court